IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ARIF MAJID,**                              Case Number 1:13 CV 843

      Petitioner,                        Judge James G. Carr

      v.                               Magistrate Judge James R. Knepp, II

**WARDEN D. MORGAN,**

      Respondent.                      REPORT AND RECOMENDATION

### INTRODUCTION

*Pro se* Petitioner Arif Majid ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA") codified as 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Morgan filed a Return of Writ (Doc. 8) with attached exhibits[1], and Petitioner filed a Traverse (Doc. 19).[2] The district court has jurisdiction according to § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 27, 2013). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. §

---

1. It bears mentioning that the Transcript provided to the Court was unindexed and did not provide a uniform system for exhibit identification. Thus, the Court was required to identify the exhibits on its own, a wholly improper exercise.
2. Traverse is now termed a Reply. *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Eighth District Court of Appeals set forth the following findings of fact:

> [¶7] It was the state's evidence at trial that on the night of September 3, 2005 and the early morning hours of September 4, 2005, appellant went to Milton's Lounge in Euclid, Ohio. The bar had a crowd of approximately fifty people at the time, slightly under maximum capacity. Appellant, described as a light skinned African American male, was accompanied by his brother, Lecarlton Parker, who was described as a dark skinned African American male and two of Lecarlton's friends, Christopher Core and Clifton Harris. Witnesses inside the bar described appellant and his group as "rowdy." While on the bar's dance floor, appellant twice removed his shirt and was asked by bar employees to re-dress. A number of witnesses reported taking notice of distinctive tattoos on appellant's bare torso, including a prominent "jihad" tattoo across his back and shoulders. Appellant's group was eventually asked to leave by bar management after an unknown member of the group dropped a drink on the dance floor. While witness accounts at trial were conflicting as to whether appellant's group left the bar on their own accord, which bar employees escorted the group out, whether the group left with or without making a disturbance and whether threats were made as the group was leaving, all witnesses agreed that the group did exit the bar.

> [¶8] Appellant and Lecarlton remained on the sidewalk outside the bar, visible through the bar's front picture window. Milton Franklin, Jr., the bar's owner, asked the men not to loiter outside the bar but his request was ignored. Milton Franklin III, the son of Milton Franklin, Jr., and an employee of the bar, joined the confrontation just outside the bar's door and angry words were exchanged between Milton Franklin III and the men. Christopher Core testified that he and Clinton Harris had walked back to their car while appellant and Lecarlton remained. Core testified that he heard Lecarlton exchange angry words with another man. Milton Jr. brought Milton III back inside the bar and began to close and lock the front door when someone outside of the bar punched the small square window in the bar's door, causing it to crack. A witness in the parking lot indicated that a darker skinned man punched the door's window and D.N.A. evidence was introduced that Lecarlton had left traces of blood on the small window.

> [¶9] Milton III responded by pulling a gun and, from the bar's doorway, firing what he described as warning shots in the direction of appellant and Lecarlton. Christopher Core testified that after he heard gunshots he heard appellant shout, "somebody tried to shoot my brother" and appellant and Lecarlton retreated into the parking lot while Milton III went into the bar and Milton Jr. locked the door.

2

[¶10] Appellant and his brother were seen running back to the bar and shortly thereafter the small window in the bar door was fully knocked out and a light skinned arm was extended through the window holding a gun and at least two shots were then fired into the bar. The bar's bouncer, Wesley Williams, struggled with the gun arm until it was retracted through the door. Paulette Shelton testified that she was able to see through the window of the door and she identified appellant as the shooter to whom the gun arm belonged.

[¶11] Witnesses testified that after the arm holding a gun was extracted from the window they saw appellant, outside the bar's front picture window point his gun at the bar and begin firing. Witnesses recognized appellant's face due to the attention he drew to himself earlier on the dance floor. Milton III testified that at the time of the shooting through the picture window, he was standing in front of the window inside of the bar when appellant saw him through the window and began shooting in his direction.

[¶12] Three bar patrons were struck by bullets as a result of the shooting. Jerome Thomas was shot twice and died as a result of his wounds. Rayshawn Whitsett was shot in the hip and Marcus Barnes was shot in both legs.

(Doc. 10-1, at 5-8).

## PROCEDURAL BACKGROUND

The relevant procedural history is undisputed by the parties and was accurately summarized in Respondent's brief, therefore it is incorporated herein with only minor changes. (Doc. 8, at 5-20; Doc. 19, at 8).

### State Trial Court

The September term of the 2005 Cuyahoga County Grand Jury issued an indictment charging Petitioner with: one count of aggravated murder (R.C. § 2903.01 (A)), (Count 1), carrying 2 firearm specifications, 3 mass murder specifications, one repeat violent offender specification and a notice of prior conviction; one count of having weapons while under disability (R.C. § 2923.13(A)(3)), (Count 2); and three counts of attempted murder (R.C. §§ 2923.02/2903.02(A), (Counts 3-5), carrying 2 firearm specifications, one repeat violent offender specification and a notice of prior conviction. Petitioner pleaded not guilty to the indictment.

3

Prior to trial, Petitioner waived his right to a jury trial on the Count 2 weapons under a disability charge and the repeat violent offender specifications, and he elected to have the issues tried to court. On August 1, 2007, the jury found Petitioner not guilty of aggravated murder but guilty of the lesser included charge of murder, with all the attached specifications; not guilty of the original Count 4 (now renumbered Count 3) attempted murder charge, and guilty of the remaining attempted murder charges, with the accompanying specifications. The court also found Petitioner guilty on the weapons under a disability charge and the repeat violent offender specification. On August 30, 2007, the court sentenced Petitioner to fifteen years to life for the aggravated murder, ten years on the weapons under a disability, and ten years and five years, respectively, on the two attempted murders. The court also merged the firearms specifications into one three-year sentence. These were all to be served consecutively for an aggregate sentence of 43 years to life in prison.[3]

**_Direct Appeal_**

On September 28, 2007, Petitioner, through new counsel, filed a notice of appeal with the Eighth District Court of Appeals, Cuyahoga County under Case No. 90491. Petitioner raised sixteen assignments of error in his brief. (Doc. 10-1). The State filed a responsive brief, to which Petitioner replied.

On June 25, 2009, the Court of Appeals reversed and remanded the case, addressing only Petitioner's second assignment of error: "Defendant was denied his right to a fair and impartial jury." The reversal was based on the court's determination that a juror was sleeping through testimony. *State v. Majid*, 182 Ohio App.3d 730 (8th Dist. 2009). The State moved the court to reconsider its reversal and remand. The court denied the motion.

---

3. Shortly after the verdict, Majid had filed a *pro se* motion for a new trial which the State opposed and the court denied.

4

On September 4, 2009, the State of Ohio, filed a notice of appeal to the Ohio Supreme Court under Case No. 2009-1591. The State's sole proposition of law was: "When in the course of a trial a judge addresses the matter of a sleeping juror to the satisfaction of the parties, a criminal defendant's right to due process is not violated."[4] Petitioner through counsel opposed the jurisdiction. On December 2, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

***Retrial (2011)***

Prior to retrial, Petitioner was evaluated by a psychiatrist. He was in court with counsel present on September 28, 2010. Defense counsel accepted on the record that Petitioner was found to be sane at the time of the act and also found to be competent to stand trial.

In November 2010, Petitioner filed several *pro se* motions. The first was a motion to dismiss or grant appropriate relief. Petitioner alleged there were Brady violations, especially concerning information about the credibility of witnesses. He also alleged his counsel had recently been told of a new investigation concerning a "get-away van" that had been concealed for over 5 years. Petitioner next requested all of his motions be heard on the record. Petitioner also filed a motion entitled "Motion to Move for Corrective Judicial Process from Wrongful Prosecution, Conviction and Lost [sic] of Liberty without Due Process of Law," pursuant to Crim. R. 12. Petitioner raised multiple claims of prosecutorial involvement in a tainted investigation. Petitioner further alleged he was deprived of liberty without due process as the prosecutor deliberately used perjured testimony and withheld evidence.

At a hearing held November 17, 2010, the court went through a box of records that were produced to defense counsel purporting to be the complete investigation of the case. The Court

---

4. The State also asked for a stay of the lower court proceedings, which the Ohio Supreme Court denied. Majid *pro se* moved the Court to either suspend his sentence or grant bail, which the Court denied.

wanted to document exactly what discovery was produced and so Bates-stamped the documents. (Doc 8-1, 8-2, at 66-346). Detective Pestak testified he had produced the entire original police file, except for the actual physical evidence. (Doc.8-2, at 345-46).

On January 6, 2011, the State requested a pre-trial Daubert hearing regarding Petitioner's expert witness, Dr. Solomon Fulero on "eyewitness misidentification." After hearing, the court ruled that Dr. Fulero could testify as an expert per *State of Ohio v. Echols* and could testify generally as to variables affecting eyewitness identification, but he could not discuss the credibility of an individual's identification.

In April 2011, just prior to his retrial, Petitioner filed three more *pro se* motions. The first was another motion to dismiss due to prosecutorial misconduct. He again accused the prosecutors of obstructing justice and knowingly promoting a hypothesis that did not comport with material evidence. The second was another motion to dismiss on double jeopardy grounds, multiple punishments, and prosecution without an indictment. Petitioner complained he was not indicted by the grand jury on the murder charge that he would be tried for. The last motion filed was a "Statement of Subject Matter and Jurisdiction," which was another attempt to attack the indictment by saying the court had no jurisdiction due to lack of a valid grand jury indictment.

On April 25, 2011, all parties agreed the indictment would be renumbered as followed:

Count 1 – Murder of Jerome Thomas (Originally Count 1)
Count 2 – Attempt Murder of Marcus Barnes (Originally Count 3)
Count 3 - Attempt Murder of Rashawn Whitsett (Originally Count 5)
Count 4 – Having Weapons Under Disability (Originally Count 2)

Petitioner then filed a *pro se* Motion to Suppress Evidence, specifically the photo array used in Milton Franklin III's identification.[5] He also wanted to suppress the identifications made by Robert Sanders and Morris Sickles that were based on Petitioner's tattoos. Counsel for

---

5. Majid had filed a motion to suppress prior to his first trial, and a hearing had been held on that motion.

Petitioner also filed a Motion to Suppress the Photographic Lineup that was used for out-of-court and in-court identification of Petitioner by various witnesses. In a short hearing prior to trial, the court reviewed its prior ruling from the first trial, where a similar motion to suppress had been denied. The court also denied the current motion to suppress. (Doc. 8-3, at 408-411).[6]

Petitioner proceeded to trial, again waiving the jury on the having weapons under disability charge only. The court overruled Petitioner's Rule 29 motion for acquittal. On May 3, 2011, the jury found Petitioner guilty on all counts and specifications and the court found him guilty on the having weapons under disability charge as well.

On May 5, 2011, the court sentenced Petitioner to fifteen years to life on Count 1, plus three years for the firearms specifications; ten years each on counts 2 and 3; and five years on count 4. All terms were to be served consecutively to each other for an aggregate sentence of 43 years to life in prison.

Petitioner, proceeding *pro se*, filed a Motion for New Trial and Affidavit on May 19, 2011. Petitioner claimed: that he was denied due process by the court's refusal to suppress the identification procedure; prosecutorial misconduct; police misconduct in withholding documents; and that the verdict was against the manifest weight of the evidence. On August 4, 2011, the trial court ruled that since Petitioner had filed a timely notice of appeal of his conviction prior to the trial court's ruling on the motion for new trial, the motion was nullified and denied it as moot.

### *Direct Appeal 2011 Conviction*

On June 2, 2009, Petitioner, through different counsel, filed a notice of appeal with the Eighth District Court of Appeals, Cuyahoga County. *State v. Majid*, 2012 WL 986127 (8th Dist. Ohio Ct. App.). In his brief filed *pro se* on October 13, 2011, Petitioner raised the following assignments of error:

---

6. Majid, through counsel, also filed an objection to having to display his tattoos at trial.

1. Defendant was denied a fair and impartial trial in violation of due process of law, when the jury found defendant guilty of murder based upon insufficient evidence.

2. Defendant was denied due process of law when the Court overruled defendant's motion to suppress the identification procedure.

3. Defendant was denied due process of law when the Court conceded Prosecutor's use of impropriety, improper calculations and prosecutorial misconduct.

4. Defendant was denied due process of law when the trial court committed plain error by admitting and allowing irrelevant and prejudicial evidence.

5. Defendant was denied due process of Law when the court amended the statue [sic] and indictment by instructing on transferred intent.

6. Defendant was denied due process of law when the he [sic] was allowed to be convicted for causing an injury rather than death.

7. Defendant was denied due process of law when the court instructed on causation.

8. Defendant was denied due process of law when the court refused to instruct on lesser included offense of reckless homicide and negligent homicide.

9. Defendant was denied due process of law and subjected to unconstitutional Multiple Punishments when he was consecutively sentenced for Murder, Attempted Murder and a weapons violation.

10. Defendant was denied due process of law when he was allowed to be convicted of attempted murder without the testimony of the victim.

11. Defendant was denied due process of law when his motion for judgment of Acquittal was overruled.

12. Defendant was denied effective assistance of counsel.

13. Defendant was denied due process of law when the court informed the jury the defendant could be convicted of accidental death or injury.

(Doc. 10-1). The State filed a brief in response, to which Petitioner filed a reply brief. On March 22, 2012, the Court of Appeals issued an opinion overruling Petitioner's assignments of error and affirming the trial court's judgment. However the court found the trial court in its sentencing entry neglected to impose sentences on each of the firearms specifications. The court only

sentenced on the three-year specification and not the one-year specification. The appellate court reversed and remanded for the limited purposes of resentencing Petitioner on each of the firearms specifications. *State v. Majid*, 2012 WL 986127 (8th Dist. Ohio Ct. App.).[7] [8]

***Ohio Supreme Court***

On April 30, 2012, Petitioner, through counsel, filed a notice of appeal with the Ohio Supreme Court under Case No. 2012-0733. In his memorandum in support of jurisdiction, he set forth the following propositions of law:

I.    A defendant has been denied due process of law when his identification results from a suggestive identification procedure.

II.    A defendant has been denied a fair trial where there are numerous instances of prosecutorial misconduct in suppression of evidence.

III.    A defendant has been denied a fair trial when a court admits irrelevant and inflammatory evidence.

IV.    A defendant has been denied due process of law when the court amended a criminal statute by instructing on transferred intent.

V.    A defendant has been denied due process of law when he is allowed to be convicted for causing an injury rather than death.

VI.    A defendant has been denied due process of law when the court improperly instructs the jury on causation.

VII.    A defendant has been denied due process of law when he was convicted of an attempted murder count where there is no testimony from the intended victim.

VIII.    A defendant has been denied due process of law when a motion for judgment of acquittal has been overruled where there is insufficient evidence to permit a rational factfinder to return a verdict of guilty.

IX.    A defendant has been unconstitutionally subjected to multiple punishments where consecutive sentences are imposed for murder, attempted murder and weapons violation involving the same firearm.

---

7. The State filed a motion for reconsideration of the remand for re-sentencing, which the court denied.

8. *State v. Majid*, 2012 WL 986127 (8th Dist. Ohio Ct. App.) hereinafter Exhibit 1.

X.      A defendant has been denied his Sixth Amendment right to effective assistance of counsel where errors and omissions by trial counsel had deprived defendant of a fair trial.

The State waived a response. On July 5, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

*2012 Resentencing*

On December 20, 2012 the trial court re-sentenced Petitioner according to the Court of Appeals remand, imposing one-year and three-year sentences on all of the firearms specifications. These sentences were then merged into one three-year sentence to be served consecutively and prior to the fifteen years to life sentence of Count 1. The aggregate sentence for Petitioner remained 43 years to life in prison.

### FEDERAL HABEAS CORPUS

Petitioner filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254 in this Court. He represented that he provided it to the prison staff for mailing on April 9, 2013. (Doc. 1). Petitioner alleged the following grounds in support of the Petition:

**GROUND ONE**: Denied due process of law when motion for judgement of acquittal was overruled where there is insufficient evidence.

**GROUND TWO:** Denial of due process of law when identification results from a suggestive identification. And where the court overruled hearing on motion to suppress identification.

**GROUND THREE**: Denied due process of law and a fair trial where there are a cumulative (sic) of prosecutorial misconduct and improprieties.

**GROUND FOUR:** Denied a fair trial and a impartial jury when the court committed plain error by admitting irrelevant and inflammatory evidence.

**GROUND FIVE:** Denied due process of law when the court amended the statute and the indictment by instructing on transferred intent.

**GROUND SIX:** Denied due process of law when the court instructions allowed petitioner to be convicted for causing a injury.

10

**GROUND  SEVEN:** Denied due process of law when the court instructed on causation.

**GROUND EIGHT:** Denied due process of law when the court instructed the jury defendant could be convicted of accidental death.

**GROUND  NINE:** Denied due process of law and a fair trial when the court refused to instruct on lesser included offenses.

**GROUND  TEN:** Unconstitutionally  subjected  to  multiple  punishment  where consecutive  sentences  are  imposed  for  murder,  two  attempted  murder  and weapons violation.

**GROUND ELEVEN:** Denied due process of law when defendant was convicted of attempted murder count where there is no testimony from intended victim.

**GROUND  TWELVE:** Denied  constitutional  right  to  effective  assistance  of counsel  where  errors,  omissions  and  failure  to  object  by  trial  counsel  deprived defendant of a fair trial.

 (sic.) (Doc. 1).

**JURISDICTIONAL ISSUES**

Respondent argues part of ground one, all of ground two, part of ground three, part of ground four, all of ground seven, all of ground nine, all of ground ten, and part of ground twelve of the Petition should be dismissed as procedurally defaulted. (Doc. 8, at 21-39).

***Procedural Default***

Reasons  of  federalism  and  comity  generally  bar  federal  habeas  corpus  review  of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Generally, a claim may be procedurally defaulted in two ways. *See Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is defaulted when the state court remedies have been exhausted but the state court declines to address the merits of petitioner's claim due to failure to comply with a state  procedural  rule. *Williams,* 460 F.3d at 806; *Harris v. Reed*, 489 U.S. 255, 265 (1989).

Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Williams*, 460 F.3d at 806.

If a petitioner fails to fairly present his claims through the state courts, and if no avenue of relief remains open or if it would otherwise be futile for the petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that the petitioner has waived his claims for habeas corpus relief. *See Harris v. Reed*, 489 U.S. 255, 260–62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989). To determine whether a claim is barred from habeas review, and if so, whether the procedural default may be excused, the court must conduct a four-step analysis:

> 1.  The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;
>
> 2.  The Court then determines whether the state courts actually enforced their procedural sanction;
>
> 3.  The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and
>
> 4.  Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This is a power derived from the court's equitable discretion. *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" Id. at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell*, 428 U.S.  465, 492–93 (1976)).

### *Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir.2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

13

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Solether v. Williams*, 527 F. App'x 476, 483 (6th Cir. 2013). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681.

Subparts One through Three of Ground One

 In ground one, Petitioner alleges the denial of his motion for acquittal was a violation of due process because the ruling was based on insufficient evidence. (Doc. 1, at 7). This claim is based on four factual and legal theories: (1) the blood on the glass door was not Petitioner's; (2) witness descriptions of the assailant do no match Petitioner; (3) Chris Core testified that he heard shots as Petitioner drove past him; and (4) the State did not prove purpose and intent to cause death. Respondent claims Petitioner waived and abandoned the first three subclaims because they were not fairly presented to the Ohio Supreme Court. (Doc. 8, at 26).

Respondent is correct in asserting that Petitioner has waived the first three subclaims because he failed to raise them to the Ohio Supreme Court. While Petitioner alleges otherwise, it is clear from a review of his Memorandum in Support of Jurisdiction that he raised only the

fourth subclaim to the Ohio Supreme Court.[9] (Exhibit 2, at 17-18). Petitioner did not fairly present all of his subclaims to the highest state court and thus, he failed to exhaust his state remedies. 28 U.S.C. § 2254(b), (c); *Anderson,* 459 U.S. 4, 6 (1982). Further, Petitioner has not proven cause for his failure to raise these subclaims to the Ohio Supreme Court. Thus, subclaims one through three of ground one should be dismissed.

Ground Two

Petitioner alleges in his second ground for relief that he was denied due process when the court denied his motion to suppress the identifications which resulted from a suggestive identification procedure. (Doc. 1, at 9). Respondent argues this claim was waived when the Eighth District did not have the ability to review the claim because Petitioner did not provide the court with the necessary transcripts from the 2007 suppression hearing for review. (Doc. 8, at 27-29). In response, Petitioner claims that he should not be held responsible for this failure because he requested that the entire record be forwarded to the Court of Appeals. (Doc. 19, at 12).

The Eighth District found:

[¶29] Appellant argues in his second assignment of error that the out-of-court identification procedure used to identify him was suggestive and conducive to misidentification, because the procedure included showing witnesses' photographs of the appellant's naked torso covered with distinctive tattoos.

[¶30] This court set forth the scope of our review regarding a motion to suppress in *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist. 1994):

In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. (Internal citations omitted.)

[¶31] In *State v. Burnside*, 100 Ohio St.3d 152, 2003 Ohio 5372, 797 N.E.2d 71, ¶ 8, the Ohio Supreme Court found that:

---

9. Petitioner's Memorandum in Support of Jurisdiction hereinafter Exhibit 2.

[A]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Internal citations omitted.)

In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Mills*, 8th Dist. No. 95837, 2011 Ohio 3837, ¶ 16, citing *State v. Harris*, 2d Dist. No. 19796, 2004 Ohio 3570, ¶ 19. "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *State v. Wills*, 120 Ohio App. 3d 320, 324-325, 697 N.E.2d 1072 (8th Dist.1997).

[¶32] Appellant filed a motion to suppress identification on February 2, 2007, prior to his first trial. The record reflects that the trial court held a hearing on appellant's motion to suppress and denied the motion on July 11, 2007. Counsel raised the issue again prior to appellant's second trial and the trial court noted appellant's objection but held that its prior ruling on the matter would stand.

[¶33] In support of the present assignment of error appellant repeatedly cites the suppression hearing from July 9, 2007. However, a copy of the transcript from that 2007 hearing has not been included in the record.

[¶34] It is axiomatic that the party challenging a judgment has the burden to file an adequate record with the reviewing court to exemplify its claims of error. *Tabbaa v. Raslan*, 8th Dist. No. 97055, 2012 Ohio 367, ¶ 10.

[¶35] App.R. 9 requires the appellant, when urging on appeal that evidence was improperly admitted, or that a judgment is unsupported by the evidence, to include in the record a transcript of all evidence relevant to the findings or conclusions and to illustrate any alleged error by reference to them in the record. *State v. Wheeler*, 8th Dist. No. 61335, 1992 Ohio App. LEXIS 5592, 1992 WL 328802, *1.

[¶36] When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the

16

> validity of the lower court's proceedings, and affirm. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

(Doc. 8, at 27-29).

Here, the Eighth District cited non-compliance with Ohio App.R. 9 as the basis for its decision to overrule Petitioner's assignment of error. While Petitioner alleges he requested the entire record be transferred to the Eighth District for review, it is still his responsibility to ensure the information necessary to review his assignment of error is provided to the court. Ohio App.R. 9(C) and (D) offer appellants who do not have the transcripts of court proceedings alternative forms of evidence to submit in support of their claims. There is no evidence that Petitioner attempted to comply with the other available options to provide the appellate court with the necessary evidence to prove his case. The state court relied upon a procedural rule which Petitioner failed to follow and thus, the first prong of the *Maupin* standard is satisfied.

As for the second prong, it is apparent from the Eighth District's opinion that it enforced a sanction on Petitioner because it declined to discuss the merits of his assignment of error due to his failure to comply with Ohio App.R. 9. (Doc. 8, at 27-29). Further the third *Maupin* prong is met because Ohio App.R. 9 is a rule with a "discernible standard of application" and is, thus, "an adequate and independent state rule which bars federal review." *Banks v. Bradshaw*, 2008 WL 4356955, at *11 (N.D. Ohio); *see also Braun v. Morgan*, 2014 WL 814918, at *33 (N.D. Ohio).

Petitioner argues the cause of his default was actually the error of the clerk of court in not submitting the requested transcript, however, as noted above, Petitioner had other options available to establish his argument. Thus, because the Petitioner has not shown adequate cause to waive his procedural default, this Court need not address whether prejudice resulted. Moreover, he has not claimed actual innocence. Accordingly, the undersigned recommends the Court dismiss ground two of the Petition because it is procedurally defaulted.

Subclaims One and Two of Ground Three

One subclaim in ground three alleges that the prosecutor engaged in misconduct by misusing a photo array. (Doc. 1, at 11). The Eighth District considered this claim as such:

> [¶42] Appellant argues that the prosecutor took from appellant's counsel a photocopy of a photo array containing a picture of appellant and his tattoos, marked it State's Exhibit 241, and improperly used the exhibit during Robert Sanders's testimony. Furthermore, Sanders confusingly testified that pencil markings on the exhibit were his own. Appellant's counsel did not object to the prosecutor's use of this document.

> [¶43] Because the appellant failed to raise this objection during his trial, "he now waives all but plain error." *State v. Sutton*, 8th Dist. No. 90172, 2008-Ohio-3677, ¶ 33, citing *State v. Childs*, 14 Ohio St.2d 56, 263 N.E.2d 545 (1968). An error does not rise to the level of plain error unless, but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Under Crim.R.52(B), plain error requires an obvious defect in the trial court proceeds that affected "substantial rights." *State v. Posa*, 8th Dist. No. 94255, 2010-Ohio-5355, ¶ 6. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

> [¶44] The analysis of a plain error and prosecutorial misconduct both require the conduct to affect appellant's substantial rights. Even accepting as true appellant's contention that the prosecutor's actions in using the appellant's exhibit were improper, neither his rights were affected nor was he prejudiced because State's Exhibit 241 was a photocopy of the photo array originally shown to Sanders by the police and appellant's attorney cross-examined Sanders on the matter. Although Sanders initially testified that the pencil markings were his own, he eventually agreed that they may not be his markings. He was nonetheless positive that he chose the appellant in the original photo array.

(Exhibit 2, at 16-17).

The Eighth District applied the contemporaneous objection rule to dispose of Petitioner's subclaim because he failed to raise an objection at the time of trial and thus, waived appellate review of the issue. Ohio Crim.R. 30(a), *see Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). Petitioner claims he did object, however the objection cited in his Reply was referring to different exhibits, State Exhibits 9 and 239, and was during the examination of Raymond Whitsett, not Robert Saunders. (Doc. 19, at 15); (Doc. 8-6, at 59-60). A review of the record

18

shows that Petitioner's counsel made no objection to the Prosecutor utilizing the defense's copy of Exhibit 241. (Doc. 8-7, at 160-61).

The court of appeals enforced the contemporaneous objection rule by proceeding into a plain error review of the issue. Importantly, "[a] state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default." *Jalowiec v. Bradshaw*, 2008 WL 312655, at *23 (N.D. Ohio), *aff'd*, 657 F.3d 293 (6th Cir. 2011) (citing *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004)). Thus, the appellate court clearly relied upon procedural bars in denying Petitioner's assignment of error. "The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice". *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Jalowiec*, 2008 WL 312655, at *23 (citing *Williams*, 380 F.3d at 968). Accordingly, the first three prongs of the *Maupin* standard have been met. Lastly, Petitioner has not made a showing of cause and prejudice or a miscarriage of justice, thus, subclaim one of ground three should be dismissed.

Also within ground three is a somewhat confusing subclaim relating to what the Court construes to be a claim that the prosecutor failed to turn over potentially exculpatory evidence to the Petitioner before trial. (Doc. 1, at 11; Doc. 19, at 37). Petitioner alleges the suppression of the following pieces of evidence: 1) video of crime scene; 2) photo array supposedly initialed by prosecution witness; 3) two different police reports; and 4) a new investigation five years after a wrongful conviction. (Doc. 19, at 37).

As stated above, to be eligible for habeas relief a Petitioner must fairly present his claims to the state court utilizing the same factual and legal theories as he does to the federal habeas court. *Solether*, 527 F. App'x at 483. In his brief to the Court of Appeals, Petitioner raised only the allegations that the initialed photo arrays were missing from the evidence produced and that

two different police reports existed. (Doc. 1-2, at 24). On appeal to the Ohio Supreme Court he raised only the issue of the missing initialed photo arrays. (Exhibit 2, at 5). Thus, because he failed to present the other factual theories to the state courts, Petitioner has abandoned all other allegations related to missing or suppressed evidence. *See Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). Petitioner has not alleged any cause for his failure to raise these issues on appeal and therefore it is recommended that the second subclaim, except as to the missing photo arrays, of ground three be dismissed because they were not fairly presented to the state courts.

All but the Second Subclaim of Ground Four

In his Petition, Petitioner alleges he was denied a fair trial because inflammatory evidence was admitted at trial; he proposes six subclaims within this allegation. (Doc. 1, at 13). Respondent argues in response that all but the second subclaim, inflammatory questioning regarding his religion to Milton Franklin III, have not been fairly presented to the state courts and thus, were waived. (Doc. 8, at 31). Petitioner noted in his brief to the Court of Appeals all six grounds for relief (Doc. 1-2, at 63-66), but on appeal to the Ohio Supreme Court he raised only the definitions of Muslim terminology in his assignment of error. (Exhibit 2, at 5-6). It is well-established that Petitioner must present the factual and legal claims to the state court before presenting them in a petition for habeas relief. *Solether,* 527 F. App'x at 483. Here, Petitioner failed to do so; however, he alleges ineffective assistance of counsel is the cause of his failure. (Doc. 19, at 15).

While "ineffective assistance of counsel may constitute cause," an attorney's error or failure to raise a claim does not. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994) (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Instead, Petitioner must identify "some objective factor external to the defense [which] impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. Here, Petitioner alleges no such impediment. First, Petitioner's

20

trial counsel did repeatedly object to the questioning of Milton Franklin III regarding the definition of Islamic terms and was found to not to be ineffective by the Court of Appeals. (Tr. 1510); (Exhibit 1, at 37-38). Second, Petitioner did not provide any argument or evidence beyond perhaps a vague allegation that his appellate counsel, who was different from his trial attorney, was ineffective. (Doc. 19, at 15-16).  Thus, because Petitioner failed to show an external factor to prove adequate cause to waive his procedural default, this Court need not address whether prejudice resulted. Moreover, he has not claimed actual innocence. Accordingly, the undersigned recommends the Court dismiss all subclaims of ground four except as to do with the questioning of Milton Franklin III about religious terminology.

Ground Seven

Next, Petitioner argues the trial court improperly instructed the jury on the definition of causation in violation of due process of law. (Doc. 1, at 19-20). The Eighth District held that Petitioner had waived this argument because he did not object to it at trial and thus, only reviewed the issue for plain error. (Exhibit 1, at 27). As stated above, failure to contemporaneously object to an issue at trial waives the issue for habeas review if, like here, the court applies and enforces a procedural rule against a petitioner who failed to follow it. Petitioner claims defense counsel objected at trial, however the citation provided does not support his claim and is in fact a reference to the jury charge. (Doc. 19, at 20); (Doc. 8-11, at 81-98). Further, Petitioner failed to make a showing of cause or miscarriage of justice, and therefore ground seven should be dismissed as procedurally defaulted.

Ground Nine

In ground nine, Petitioner alleges the trial court erred when it refused to instruct the jury on lesser included offenses. (Doc. 1, at 24). Respondent argues Petitioner has procedurally defaulted this claim both for failure to contemporaneously object at trial and by not raising the

issue to the Ohio Supreme Court. (Doc. 8, at 34). In fact, defense counsel did request these instructions be given to the jury, (Doc. 8-11, at 22-26), but it is of no consequence because Petitioner failed to present this issue on appeal to the Ohio Supreme Court. (Exhibit 2).

Petitioner attempts to argue the lesser included offense claim was subsumed in his argument regarding the sufficiency of evidence, however the Court finds his argument without merit. (Doc. 19, at 21-22). It is not the job of the courts to develop arguments or speculate as to assignments of error; rather the petitioner must explicitly and specifically raise grounds for relief to the court. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008). Petitioner failed to specifically raise the claim on appeal or exhaust his state remedies therefore, the issue is waived. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). Furthermore, Petitioner has not asserted adequate cause for his failure to raise this issue before the Ohio Supreme Court and thus, Petitioner's ninth ground for relief should be dismissed.

Ground Ten

Next, Petitioner asserts his sentences should have been merged because they are allied offenses. (Doc. 1, at 25-26). The Eighth District found Petitioner failed to object at his sentencing in violation of the contemporaneous objection rule, and reviewed the issue for plain error. (Exhibit 1, at 33-35). Petitioner argues the Court of Appeals waived the procedural bar by entering into a plain error review. (Doc. 19, at 33). However, a plain error review is not a waiver of the procedural bar, but rather an acknowledgement of it.  *See, e.g., Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Application of the contemporaneous objection rule is an adequate and independent state ground which results in dismissal of a claim unless Petitioner can show cause and prejudice or a miscarriage of justice, neither of which was demonstrated in

22

this instance. Therefore, ground ten of the Petition should be dismissed as procedurally defaulted.

<u>All but Subclaims Five and Six of Ground Twelve</u>

In his claim for ineffective assistance of counsel, Petitioner brought ten subclaims. (Doc. 1, at 29-30). On direct appeal Petitioner only raised three subclaims: (1) trial counsel erred by not requesting accidental death jury instruction; (2) trial counsel erred by failing to object to inflammatory questions and comments relating to Islam; and (3) trial counsel erred by not objecting to the court's responses to jury questions. (Doc. 1-2, at 77-79). However, in his application to the Ohio Supreme Court for jurisdiction, Petitioner only raised the first two subclaims and abandoned the third. (Exhibit 2, at 20-21). As previously stated, Petitioner is limited to raising only the claims of ineffective assistance of counsel which were presented to the state courts. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1989).

The additional subclaims were not included in his appeal despite being discoverable in the record and having different appellate counsel. *See Edwards v. Carpenter*, 529 U.S. 446 (2000); (*See also* Doc. 1, at 33; Doc. 1-2, at 36). Petitioner did not show any cause for his failure to raise these other issues on appeal, thus all other subclaims, except as to the accidental death jury instruction and the inflammatory questioning, are waived. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

***Non-Cognizable Claims***

The Court will not have jurisdiction over Petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254. Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146

23

F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly", and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

## Second Subclaim of Ground Four

The only remaining subclaim of ground four alleges Petitioner was denied a fair trial because the prosecutor elicited and the trial court allowed inflammatory and improper evidence to be admitted regarding his Islamic-themed tattoos.  (Doc. 1, at 13; Doc. 19, at 54-56). The Eighth District rejected this claim as follows:

> **[¶57]** In his fourth assignment of error appellant argues that the trial court committed plain error by admitting irrelevant and prejudicial evidence.
>
> **[¶58]** As a basic principle, all relevant evidence is admissible, unless the probative value of that evidence is substantially outweighed by its prejudicial effect. Evid.R. 403. "Relevant" evidence is defined as evidence having any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. See Evid.R. 401. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343 (10th Dist.1987). "[A] trial court's decision to admit or exclude evidence 'will not be reversed unless there has been a clear and prejudicial abuse of discretion.'" *State v. Hancock*, 108 Ohio St.3d 57, 2006 Ohio 160, 840 N.E.2d 1032, ¶ 122, quoting *O'Brien v. Angley*, 63 Ohio St.2d 159, 407 N.E.2d 490 (8th Dist.1980). "The term 'abuse of discretion' connotes more than an error of law or judgment; it

implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 5 Ohio B. 481, 450 N.E.2d 1140 (9th Dist.1983).

**[¶59]** Appellant argues that the State's questioning of Milton Franklin III regarding the meanings of certain Islamic terms was irrelevant and unduly prejudicial. We disagree. Milton Franklin III testified at trial that he is a Sunni Muslim. Franklin III testified that because of his religious background he recognized the Islamic terms tattooed on appellant's torso when he observed appellant dancing without his shirt and the terms had meaning to him. Appellant further testified that religion had no role in the events of the evening. Franklin III's testimony, as well as other witnesses' testimony regarding appellant's tattoos, was relevant to establish why the witnesses remembered appellant and his distinctive tattoos. As previously discussed, appellant's actions inside the bar, including his behavior on the dance floor and the removal of his shirt to display his tattoos, were the reasons that witnesses took notice of his face and remembered him. This is particularly true of Milton Franklin III, for whom appellant's tattoos had meaning. We cannot say that the trial court abused its discretion in allowing Franklin III's testimony.

(Exhibit 1, at 22-23).

The undersigned agrees with the Court of Appeals' conclusion that the testimony related to the tattoos and their definitions was relevant to supporting Mr. Franklin III's testimony and eyewitness identification. The evidence elicited was relevant and within the proper bounds of the proceeding such that the trial court did not create fundamental unfairness by admitting it into evidence. *See Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). The Court would only be entitled to overrule the state court's evidentiary ruling if it was found to "offend the principles of justice" to such a degree that a due process violation occurred, but that is not the case here. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Furthermore, Petitioner cited no federal cases in support of his allegation that the admission of this evidence created an unfair process which violated his fundamental rights. The remaining subclaim in ground four is non-cognizable and should be dismissed.

Grounds Five and Eight

In grounds five and eight, Petitioner claims he was denied due process of law on the basis of various jury instructions. Specifically, in ground five he challenges the instruction on transferred intent as an amended indictment and in ground eight he alleges the instructions allowed him to be convicted on the basis of accidental death. (Doc. 1, at 16-18, 21-22). The state Appeals Court reviewed the jury instructions and found:

> **[¶62]** Appellant's fifth, six, seventh and thirteenth assignments of error assert various errors in the trial court's jury instructions. We address these errors together.

> **[¶63]** We review a trial court's issuance of a jury instruction for an abuse of discretion. *State v. Bagwell*, 8th Dist. No. 96419, 2011 Ohio 5841, ¶ 20, citing *State v. Williams*, 8th Dist. No. 90845, 2009 Ohio 2026. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 13 Ohio B. 521, 469 N.E.2d 939 (8th Dist. 1984).

> **[¶64]** The trial court instructed the jury as follows:

>> Before you can find the defendant guilty of murder, you must find beyond a reasonable doubt that on or about the 4th day of September, 2005 and in Cuyahoga County, Ohio, the defendant purposely caused the death of Jerome Thomas.

>> Purpose is an essential element of the offense of murder. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of Jerome Thomas.

>> Purpose is a decision in the mind to do an act with a conscious objective of producing a specific result.

>> To do [an] act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

>> The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used, and all of the other facts and circumstances in evidence.

If you find that the defendant did have a purpose to cause the death of a particular person, and that the shooting accidentally caused the death and/or injury of another person, then the defendant would be just as guilty as if the gunfire had taken effect upon the person intended.

The purpose required is to cause the death of another, not any specific person. If the gunfire missed the person intended but caused the death of another, the element of purpose remains and the offense is as complete as though the person for whom the gunfire was intended had died.

However, if there was no purpose to cause the death of anyone, the defendant cannot be found guilty of murder.

The state charges that the act or failure to act of the defendant caused the death of Jerome Thomas. Cause is an essential element of the offense of murder. Cause is an act or failure to act which in the natural and continuous sequence directly produces the death of another, and without which it would not have occurred.

The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act or failure to act.

There may be * * * one or more causes of an event. However, if a defendant's act or failure to act was one cause, then the existence of other causes is not a defense.

**[¶65]** Specifically, in regards to Counts 2 and 3, the court instructed:

Before you find the defendant guilty of attempted murder in either one or both of these counts, you must find beyond a reasonable doubt that on or about the 4th day of September, 2005, and in Cuyahoga County, Ohio, the defendant did attempt to purposely cause the death of Marcus Barnes in the case of Count 2, and/or Rayshawn Whitsett in the case of Count 3.

Murder is the principle offense in the crime of attempted murder. Murder is purposely causing the death of another.

An attempt occurs when a person knowingly engages in conduct that, if successful, would result in the commission of the offense of attempted murder.

**[¶66]** In his fifth and thirteenth assignments of error appellant asserts that the trial court erroneously instructed the jury on transferred intent. Appellant claims that the trial court's instruction on transferred intent also constituted a constructive amendment of his indictment. We disagree.

27

**[¶67]** This court has previously rejected the argument that an instruction on transferred intent constitutes a constructive amendment of a defendant's indictment. *State v. Jackson*, 8th Dist. No. 76141, 2000 Ohio App. LEXIS 1741, 2000 WL 426556, *13 (Apr. 20, 2000).

**[¶68]** Contrary to appellant's arguments, the transferred intent language used by the trial court is consistent transferred intent instructions we have previously upheld. *Id.*; see also *Whiteside v. Conroy*, 10th Dist. No. 05AP-123, 2005 Ohio 5098, ¶ 5, 55; *State v. Scott*, 7th Dist. No. 02-CA-215, 2004 Ohio 5117, ¶ 21, 28.

**[¶69]** The evidence presented at trial established that appellant fired his gun into the bar's picture window with the intent to kill Milton Franklin III but, due to his poor aim, appellant killed Jerome Thomas and wounded Rayshawn Whitsett and Marcus Barnes. The instruction given by the trial court informed the jury that if the defendant intended to kill when he pulled the trigger, it did not matter whether he killed the intended target or an innocent bystander. Based on this evidence, an instruction on transferred intent was supported by the evidence in this case. Accordingly, appellant's fifth and thirteenth assignments of error are without merit and overruled.

(Exhibit 1, at 23-27).

Here, the Court of Appeals definitively stated that Ohio law did not support Petitioner's theories regarding constructive amendment of the indictment or the infirmity of the transferred intent instruction. It is clear from the instruction that "accidentally" referred to the victim and not to the act of firing the weapon, which is consistent with a transferred intent instruction. Further, Petitioner argues no federal law in support of these grounds for relief but rather only cites to Ohio law to persuade this Court that the instructions were incorrect. Petitioner's alleged errors relate to the application and interpretation of state law, a non-cognizable basis for a federal habeas petition. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990); *see also Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)). Petitioner did not present grounds five or eight as a claim for relief under the Constitution or laws of the United States, nor did the alleged errors create fundamental unfairness to the Petitioner and thus, they are non-cognizable and should be dismissed.

### STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). The Supreme Court explicitly requires federal habeas courts to review state court decisions with "deference and latitude" and specifically stated relief under the habeas corpus standard is intentionally difficult. *Id.* at 785-86.

#### Insufficiency of Evidence

To defeat a claim of insufficient evidence, the court must find that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard

"gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Further it is important to note the double deference applicable in this case; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008).

Fourth Subclaim of Ground One

In the last remaining subclaim of ground one, Petitioner alleges he was denied due process of law when his motion for judgment of acquittal was denied, specifically because the

State did not prove purpose and intent to murder or attempt murder. (Doc. 1, at 7). This claim is addressed on the merits.

The Court of Appeals rejected Petitioner's insufficiency argument as follows:

> [¶18] An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, (superseded by statute and constitutional amendment on other grounds). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997 Ohio 52, 678 N.E.2d 541 (Cook, J., concurring).

> [¶19] The elements of murder and attempted murder are set forth in statute. R.C. 2903.02(A) provides: "[n]o person shall purposely cause the death of another * * * " and R.C. 2923.02(A), the "attempt" statute provides that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

> [¶20] Pursuant to R.C. 2901.22(A), a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

> [¶21] In the case sub judice, the state presented sufficient evidence at trial to support appellant's convictions for murder and attempted murder. Four separate witnesses, Rayshawn Whitsett, Michelle Johnson, Nickeesha Robinson and Milton Franklin III, testified to seeing appellant fire the gunshots that came into the bar through the picture window. Paulette Shelton testified to seeing appellant fire the shots that came through the window in the bar's door. Each of the witnesses recognized appellant's face due to the attention he drew to himself from his rowdy behavior earlier in the evening on the bar's dance floor, including removing his shirt and displaying distinctive tattoos.

> [¶22] In his first and eleventh assignments of error appellant argues that the state failed to introduce evidence that he acted purposely in causing the

31

death of Jerome Thomas or attempting to cause the deaths of Rayshawn Whitsett and/or Marcus Barnes.

[¶23] Whether a defendant had the specific intent to kill must be determined by the facts and circumstances surrounding the crime, "including the instrument used, its tendency to destroy life if designed for that purpose, and the manner of inflicting the wound." *State v. Pound*, 2d Dist. No. 16834, 1998 WL 636996, *3, citing *State v. Robinson*, 161 Ohio St. 213, 218-219, 118 N.E.2d 517 (1954). The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death, coupled with relevant circumstantial evidence. *State v. Searles*, 8th Dist. No. 96549, 2011-Ohio-6275, at ¶ 11, citing *State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025 (1982). "[P]ersons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). "The act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown*, 8th Dist. No. 68761, 1996 WL 86627, *6 (Feb. 29, 1996).

[¶24] As an initial matter, we note that the evidence at trial was that appellant fired into a crowded bar that was operating at slightly under its maximum capacity. Courts have previously held that evidence that a defendant shot a gun into a crowd of people was sufficient to establish the purposefulness element of R.C. 2903.02(A). *State v. Williamson*, 8th Dist. No. 95732, 2011-Ohio-4095, at ¶ 19, citing *State v. Carter*, 115 Ohio App.3d 770, 686 N.E.2d 329 (7th Dist. 1996); *State v. Smith*, 89 Ohio App.3d 497, 624 N.E.2d 1114 (10th Dist. 1993); *State v. Cottrell*, 8th Dist. No. 81356, 2003-Ohio-5806.

[¶25] The state introduced evidence, however, that appellant fired specifically at Milton Franklin III, who was positioned at the time of the shooting inside the bar and in front of the bar's picture window. "[U]nder the doctrine of transferred intent, an offender who intentionally acts to harm someone but ends up accidentally harming another is criminally liable as if the offender had intended to harm the actual victim." *In re T.K.*, 109 Ohio St.3d 512, 514, 2006-Ohio-3056, 849 N.E.2d 286, at ¶ 15. We have previously applied the doctrine of transferred intent to "bad aim" cases such as the present case to find sufficient evidence of purposeful conduct to support both murder and attempted murder convictions. *State v. Wheeler*, 8th Dist. No. 66923, 1995 WL 322247, *4 (May 25, 1995).

[¶26] The state's evidence was that appellant fired six shots through the bar's front picture window intending to kill Milton Franklin III, and due to his poor aim, Jerome Thomas, Rayshawn Whitsett and Marcus Barnes were shot instead. We find that the state introduced sufficient evidence of appellant's purposeful conduct to support his convictions for murder and attempted murder.

(Exhibit 1, at 8-11).

Upon review, the Court finds the Eighth District's recitation and application of the law to be without error. It is evident in this case that this conduct was purposeful; Petitioner is responsible for the natural and probable consequences of his actions, in this case, the death and injury of three individuals. Further, if Petitioner was aiming for Milton Franklin, III as theorized by the prosecution, and accepted by the jury, the doctrine of transferred intent clearly applies to shift the result —or probable consequence of Petitioner's actions— intended for Mr. Franklin to Misters Whitsett, Barnes, and Thomas. There is no question in this Court's opinion that firing a weapon in a crowded bar in the direction of humans satisfies the purpose and intent element of murder and attempted murder.

It is also clear that the jury chose to accept that Petitioner was intending to shoot Mr. Franklin and the account of the four witnesses who testified that Petitioner fired the gun on the night in question. Petitioner argues this Court should set aside the accepted evidence because it is "patently incredible"; however the Court finds no basis for this argument and will not overturn the jury's determination on witness credibility. (See Doc. 19, at 43) (citing *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). Petitioner did not prove the jury's decisions were in any way unreasonable or unfounded; therefore considering the facts in the record, a "rational trier of fact [could] make a permissible inference of guilt" from the evidence presented. *Newman*, 543 F.3d at 796-97.

Thus, giving full credit to the jury's evidentiary determinations and the state courts' reasonable application of the law in this case, the Court finds Petitioner failed to overcome his burden in proving the insufficiency of the evidence or the lower courts were objectively unreasonable in their application of the law. As such, the undersigned recommends the final subclaim of ground one be found without merit and be dismissed.

33

Ground Eleven

Ground eleven also challenges the sufficiency of evidence to prove the attempted murder of Marcus Barnes, particularly because Mr. Barnes was not present at trial to testify. (Doc. 1, at 27-28). The Court of Appeals rejected this claim as well:

> [¶26] The state's evidence was that appellant fired six shots through the bar's front picture window intending to kill Milton Franklin III, and due to his poor aim, Jerome Thomas, Rayshawn Whitsett and Marcus Barnes were shot instead. We find that the state introduced sufficient evidence of appellant's purposeful conduct to support his convictions for murder and attempted murder.

> [¶27] In his tenth assignment of error appellant challenges the sufficiency of his attempted murder conviction of Marcus Barnes and argues that his constitutional right to confrontation was denied because Barnes did not testify at trial. At trial, the state sought to introduce prior testimony of Marcus Barnes regarding this incident due to Barnes's unavailability. As an initial matter, it is unclear whether Barnes previously testified in a civil case regarding this shooting incident or at appellant's prior criminal trial. Appellant's argument is without merit because the trial court denied the introduction of Barnes's prior testimony, whatever the source. The testimony of Rayshawn Whitsett, Euclid Detective Robert Pestak and medical records from Hillcrest Hospital established that Barnes received gunshot wounds to both his legs as a result of this shooting.

(Exhibit 1, at 11-12).

As previously stated, to bring a successful claim for sufficiency of evidence the Petitioner must prove that a jury could not have found Petitioner guilty beyond a reasonable doubt, even after reviewing all the evidence in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319. Further, the reviewing court must apply a double deference to the findings of the trier of fact and the state court before relief can be granted. *See Tucker,* 541 F.3d at 656.

Petitioner alleges that without Mr. Barnes' testimony, the evidence was insufficient to prove his injuries through Rayshawn Whitsett, Detective Robert Pestak, and medical records; this assertion is incorrect. (Doc. 19, at 60-64). The testimony of an eyewitness, the investigating officer, and Mr. Barnes medical records documenting gunshot wounds in both legs are sufficient evidence to prove attempted murder, and the jury accepted this evidence. The Petitioner has not

overcome the double deference accorded under *Jackson* and AEDPA, nor has he shown that the Court of Appeals' application of the law was objectively unreasonable. Ground eleven is without merit and should be dismissed.

### Prosecutorial Misconduct

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). In evaluating fairness, it is not the prosecutor's culpability but the fairness of the whole trial taken "within the context of the entire record." *See Smith v. Phillips*, 455 U.S. 209, 219 (1982); *Lundy v. Campbell*, 888 F.2d 467, 472-73 (6th Cir. 1989). Lastly, in a federal habeas corpus proceeding challenging a state conviction, the Court may not grant relief unless that error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (per curiam) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Ground Three

Remaining in ground three are the following subclaims of prosecutorial misconduct: (1) questioning of Milton Franklin, III about Islamic terms; (2) insinuating that his expert witness Dr. Fulero was coerced during cross-examination; (3) making biased and prejudicial comments during closing argument; and (4) initialed photo arrays never produced to defense. The Court of Appeals addressed Petitioner's remaining claims for relief as follows:

> [¶41]  Our focus upon review is whether the prosecutor's comments violated appellant's substantial rights, thereby depriving appellant of a fair trial such that

35

there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *Hicks* at ¶ 30; *State v. Onunwor*, 8th Dist. No. 93937, 2010-Ohio-5587, at ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994), overruled on other grounds. "We note, however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt and the outcome of the case would have been the same regardless of evidence admitted erroneously." *Hicks* at ¶ 30, citing *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988).

*****

**[¶45]** Appellant next argues that the state engaged in prosecutorial misconduct when the prosecutor questioned Milton Franklin III concerning his Kufi and beard, his father's religious association and the definitions of Islamic terms, including Assalaamu Alaykum, Mujahid and Jihad. "[I]t is improper for the state to rouse the jury to convict merely by exciting their indignation against the defendant, against defense counsel, or against the crime itself." *State v. Sawyer*, 8th Dist. No. 79197, 2002-Ohio-1095.

**[¶46]** Although we find the prosecutor's line of questioning to be of minimal relevance and straddling the line of impropriety, on this record we cannot find that Milton Franklin III's answers rise to the level of reversible error, as these comments did not deprive appellant of a fair trial.

**[¶47]** Appellant next argues that the cross-examination of his expert witness, Dr. Soloman Fulero, was improper. In the cross-examination of Dr. Fulero, the prosecutor challenged Dr. Fulero's bias and character traits.

**[¶48]** Under Evid.R. 611(B), "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983). However, "[i]t is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence." *State v. Smidi*, 88 Ohio App.3d 177, 183, 623 N.E.2d 655 (6th Dist. 1993).

**[¶49]** The prosecutor asked Dr. Fulero if his step-son was currently serving a prison sentence for committing a homicide and if he ever shipped marijuana in the 1970's in order to determine whether he had a potential bias against the state. The scope of cross-examination of an expert on "questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." *Calderon v. Sharkey*, 70 Ohio St.2d 218, 436 N.E.2d 1008, at syllabus (1982). Evid.R. 616(A) includes certain acceptable methods of impeaching witnesses: "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

36

[¶50] Because the prosecutor's cross-examination questions were made in order to determine Dr. Fulero's potential biases, the issue remains within the discretion of the trial court. We find no abuse of discretion based upon the record.

[¶51] Finally, appellant takes issue with comments made by the prosecutor during closing arguments. In general, prosecutors are given considerable latitude in opening and closing arguments. *State v. Ballew*, 76 Ohio St. 3d 244, 255, 1996-Ohio-81, 667 N.E.2d 369. In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St. 2d 76, 82, 263 N.E.2d 773 (1970):

> Prosecutors are granted wide latitude in closing argument to urge that the evidence presented and the only reasonable inferences to be drawn from that evidence point to the guilt of the accused. However, it is improper for the state to rouse the jury to convict merely by exciting their indignation against the defendant, against defense counsel, or against the crime itself. *State v. Nobles*, 106 Ohio App.3d 246, 270, 665 N.E.2d 1137 (2d Dist. 1995).

[¶52] Furthermore, a prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused or allude to matters that are not supported by admissible evidence. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The wide latitude given the prosecution during closing arguments "does not 'encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial.'" *State v. Hart*, 8th Dist. No. 79564, 2002-Ohio-1084, citing *State v. Freeman*, 138 Ohio App.3d 408, 419, 741 N.E.2d 566 (1st Dist.2000).

[¶53] Appellant claims the prosecutor made biased and prejudicial remarks about the appellant's tattoos in order to inflame the jury. During his closing argument, the prosecutor stated: "What do you think it takes, from your life experiences, to place this body art on yourself as a person; what statement are you trying to make? Stop and ask yourself that question. Mujahid, a rifle, swords, Jihad. Is that a statement of self-expression of don't mess with me. I'm a warrior, I'm dangerous. I'm something that you don't want to mess with. I think the average person would agree with those statements."

[¶54] The prosecutor's insinuation that appellant intended his tattoos to express that he was "dangerous" or "something that you don't want to mess with" improperly indicated that appellant was an "Islamic warrior." However, the fact that the prosecutor engaged in some improper argument does not warrant reversal unless the remarks prejudicially affected substantial rights of the accused. *State v. Onunwor*, 8th Dist. No. 93937, 2010-Ohio-5587, ¶ 36. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *Id.*, citing *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (8th Dist.1990). "The touchstone of

analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**[¶55]** Using these standards, we see no basis for reversing appellant's conviction based on the prosecutor's comments. Even though some of the prosecutor's argument may have been improper, such comments did not pervade the entire trial, let alone the closing argument. We are unconvinced that the result of appellant's trial would have been different without the above excerpts of improper commentary by the prosecution. We conclude that the improper statements made by the prosecutor during closing arguments did not substantially prejudice appellant so as to deny him a fair trial.

(Exhibit 1, at 15-21).

The Eighth District appropriately found that while the prosecutor's questioning of Milton Franklin III was of "minimal relevance and straddling the line of impropriety", it did not rise to the level of egregiousness necessary to deny Petitioner a fair trial. A reviewing court must analyze the alleged misconduct in light of the entire record and the undersigned cannot find the questioning of Mr. Franklin, as to Islamic terms, so outrageous as to pervade the fairness of the entire trial.  Mr. Franklin's testimony regarding the tattoos and his acknowledgment that the terms held meaning within his religion are relevant to supporting the credibility of his eyewitness identification. Petitioner's tattoos, as his primary identifier, are relevant regardless of what the tattoos said or stood for, and eliciting testimony regarding the tattoos did not infect the entire trial with unfairness. *See Darden*, 477 U.S. at 180.

As to the cross-examination of Dr. Fulero, Petitioner alleges the line of questioning regarding his past experience with law enforcement was improper. Following the reasoning of the Court of Appeals, the undersigned cannot find that these questions, or even the inference that Dr. Fulero was biased, so pervaded the trial as to render it a due process violation. Furthermore, Petitioner provided no proof that the prosecutor's questions were knowingly based on incorrect information or falsehoods such that presenting these questions to the jury would be illegal. The rules of evidence allow for questioning of witnesses to reveal potential areas of bias or prejudice

and the limits of these questions are governed by the discretion of the trial court. The Court of Appeals correctly applied the law to their review in so much as it cannot be found to be an unreasonable application of the law.

Next, the Petitioner takes issue with the prosecutor's comments during closing arguments that insinuated Petitioner's Islamic tattoos proved he was dangerous, violent, and likened him to a terrorist. (Doc. 19, at 47-50). Upon reviewing the comments made, it certainly appears as if the prosecutor was drawing improper inferences from Petitioner's religion and tattoos; however to find prosecutorial misconduct, the Court does not look to the acts of the prosecutor but rather their effect on the entire trial's fairness. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982); *Lundy v. Campbell*, 888 F.2d 467, 472-73 (6th Cir. 1989). The Court of Appeals concluded that the prosecutor's comments did not rise to the level of reversible error because they did not pervade even the closing argument, let alone the trial as a whole. (Exhibit 1, at 20-21). The Petitioner has not proven that these comments jeopardized the fairness of the judicial process or led the jurors to misconstrue the evidence before them. While the prosecutor's comments were unwarranted, this Court agrees that the comments had neither a "substantial [n]or injurious effect or influence on the jury verdict" such that the outcome would have been different had the prosecutor not made those comments. *See Calderon*, 525 U.S. at 145.

Last is Petitioner's allegation that initialed photo arrays were missing from the evidence produced to the Petitioner before trial as a result of prosecutorial misconduct; a failure which ultimately led to a violation of his due process rights. (Doc. 19, at 46-48). In support of this argument, Petitioner cites to the trial transcript, however upon reviewing the transcript citations the Court can find no mention of missing initialed photo arrays at the citations marked. Nor is there any evidence that these alleged missing photo arrays were purposefully excluded by the direction or with the knowledge of the prosecutor or the police, in fact the Detective in charge of

investigation stated he turned over all related documents. (Doc. 1-4, at 106-07). As stated before, it is not the Court's responsibility to develop arguments or identify evidence in the record in support of Petitioner's claims. Because Petitioner has not provided proof of his claim of prosecutorial misconduct the Court has nothing to review for error and thus, recommends that ground three be dismissed as without merit.

***Jury Instructions***

Normally, alleged errors in jury instructions do not rise to the level of federal constitutional violations. *See Engle v. Isaac*, 456 U.S. 107 (1982). The petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). If an instruction is ambiguous, but perhaps not erroneous, a due process violation occurs if it is determined that there is a "reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the constitution." *Estelle v. McGuire*, 502 U.S. 62, 73 n.4 (1991) (quoting *Boyd v. California*, 494 U.S. 370, 380 (1990).

Ground Six

Here, Petitioner alleges the phrase "and/or" injury within the transferred intent instruction caused confusion in the jury because it allowed him to be convicted of murder based on the intent to injure. (Doc. 19, at 57-58) (citing *Schad v. Arizona*, 501 U.S. 624, 651 (1999) (plural opinion)). The trial court gave the following relevant instruction on transferred intent:

> If you find that the defendant did have a purpose to cause the death of a particular person, and that the shooting accidentally caused the death and/or injury of another person, then the defendant would be just as guilty as if the gunfire had taken effect upon the person intended. (Doc. 8-11, at 1903-04).

The Court of Appeals ruled as follows regarding the transferred intent instruction:

 **[¶70]** In his sixth assignment of error appellant argues that the trial court's instruction on transferred intent allowed the jury to convict him of murder based only on proof that he injured someone rather than caused a death. Appellant seizes

40

> solely upon the trial court's instruction regarding transferred intent. Appellant was charged not only with murder but also with two counts of attempted murder of those injured. The trial court provided a single instruction on transferred intent applicable to all counts. The trial court's instruction on transferred intent fit the circumstances of appellant's case. Furthermore, a single challenged jury instruction may not be reviewed piecemeal or in isolation but must be reviewed within the context of the entire charge. *State v. Shopshire*, 8th Dist. No. 85063, 2005 Ohio 3588, ¶ 23, citing *State v. Hardy*, 28 Ohio St.2d 89, 276 N.E.2d 247 (1971). Appellant's argument completely ignores the court's detailed instructions regarding the murder charge that explicitly required that the jury find that appellant caused the death of Jerome Thomas before he could be convicted of murder.

(Exhibit 1, at 26-27).

The Eighth District found that the transferred intent instruction was general and intended to apply to both charges facing Petitioner, murder and attempted murder. While it is certainly possible to construe the instruction as Petitioner alleges, the trial court went on to specifically state in its instructions that to find Petitioner guilty of murder and attempted murder, his actions had to be done with the intent to kill. (Doc. 8-1, at 1900-1906). When reviewing the instructions as a whole, it is evident that the jury had to find an intent to kill; then and only then, could they transfer that intent to Misters Thomas, Barnes, and Whitsett. The instruction did not create a reasonable likelihood of confusion nor did it infect the entire trial such that a due process violation occurred. The Eighth District's application of the law was not contrary to Supreme Court precedent and therefore, ground six is without merit and should be dismissed.

### Ineffective Assistance of Counsel

Effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland*: that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland*, 466 U.S. at 698; *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 686–692). This Court may dispose of an ineffective

41

assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id.* at 697.

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. It is not enough to show error had "some conceivable" effect on the outcome but rather that it is "reasonably likely [the decision would] have been different absent the errors". Id. at 693, 695. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[] . . . is . . . highly deferential – and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state court even more latitude to reasonably determine that a defendant has not satisfied the standard.

42

*Knowles v. Mirzayance*, 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id*. at 785.

Ground Twelve

As stated before, Petitioner must raise the same theories of ineffective assistance of counsel on habeas review as were presented to the Ohio appellate courts. *See Wong*, 142 F. 3d. at 322. Petitioner only has two remaining grounds for ineffective assistance of counsel, failure to request an accidental death instruction and failure to object to improper questioning regarding Islamic terms; all others were not fairly presented to the state courts and thus, are unexhausted. The Eighth District Court of Appeals addressed Petitioner's ineffective assistance claim as follows:

> **[¶99]** Appellant argues that his counsel was ineffective for failing to object to the trial court's jury instruction regarding transferred intent. However, the record reveals that appellant's counsel did, in fact, object to the transferred intent instruction. Furthermore, as discussed above in our resolution of appellant's fifth, sixth, seventh and thirteenth assignments of error, the instruction was proper. In connection with this instruction appellant, citing *State v. Underdown*, 124 Ohio App.3d 675, 707 N.E.2d 519 (10th Dist. 1997), argues that his counsel was ineffective for failing to request a jury instruction on the defense of accident. Appellant confuses the trial court's use of the term "accidentally" in its transferred intent instruction with the defense of accident referenced in *Underdown*. Unlike *Underdown*, the present case contains absolutely no evidence that appellant's shooting was the result of an accident instead of an intentional shooting with unintended victims.

> **[¶100]** Appellant next argues that his trial counsel was ineffective for failing to object to the prosecutor's questions and closing arguments regarding his tattoos and the meaning of various Islamic terms. We note that appellant's counsel did in fact repeatedly object to the prosecutor's questioning of Milton Franklin III, regarding the meaning of these terms. As addressed in appellant's third and fourth assignments of error, this evidence was relevant to establish why various witnesses remembered appellant from the bar prior to the shooting and no prejudice to appellant resulted.

43

(Exhibit 1, at 36-37).

Upon review of the Court of Appeals decision, the Court agrees that Petitioner's trial counsel was not deficient, a conclusion that is entitled to deference. The "Constitution guarantees only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Issac*, 456 US 104, 133-34 (1982).

Here, Petitioner argues he was entitled to an instruction on accidental death however, as succinctly stated by the Eighth District; there is absolutely no evidence to suggest these shootings were "the result of an accident instead of an intentional shooting with unintended victims." (Exhibit 1, at 37). It is not inadequate representation to fail to suggest a jury instruction for a defense that is not supported by the evidence, in fact it is the opposite. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990). Furthermore, as the Court of Appeals decided the transferred intent instruction giving rise to Petitioner's claim was appropriate.

In his second argument, Petitioner claims his counsel was ineffective for failing to object to the prosecutor's questions regarding Islam. Yet a review of the transcript reveals that counsel did in fact object; counsel cannot be held responsible for the trial court's exercise of discretion in overruling the objection. Petitioner continues on stating that counsel failed to object to the prosecutor's personal comments and insinuations, however as stated above the Sixth Amendment does not guarantee the right to perfect counsel. *Engle*, 456 at 133-34. Lastly, the Court of Appeals found, and this Court agrees, that allowing testimony as to the Islamic terms was not contrary to established law and the prosecutor's inappropriate characterizations of Islam did not infect the entire trial with fundamental unfairness.

Petitioner has not carried his burden of proving deficient performance, and thus this Court need not address prejudice. The Court of Appeals' determination of the facts on the record

44

and its application of the *Strickland* test were reasonable, and are therefore entitled to deference. Petitioner's assertion to the contrary is without merit and ground twelve should be dismissed.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Court dismiss the Petition.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).